NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-34-HRW

STEVEN E. WARMAN                                                                                           PETITIONER

VS:                            **MEMORANDUM OPINION AND ORDER**

FEDERAL BUREAU OF PRISONS, ET AL.                                                       RESPONDENT

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Steven E. Warman, an inmate in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Prison Camp in Ashland, Kentucky, filed the instant *pro se* petition for a writ of habeas corpus, purportedly brought pursuant to 28 U.S.C. §2241, and he has now paid the district court filing fee.

This matter is before the Court for screening. 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, \*1 (6th Cir. 2002). During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). As Petitioner is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

CLAIMS

Petitioner claims that the BOP has promulgated a policy, Program Statement ("P.S.") 7310.04, which wrongly and "categorically" (1) denies prisoners, including himself, consideration

for home confinement or placement in a Community Corrections Center ("CCC")[1] if the inmate is not in the final 10% of his or her sentence; and (2) restricts the placement of inmates on home confinement to the last 10% or his or her sentence.

## FACTUAL ALLEGATIONS

Petitioner Warman has submitted a self-styled, typewritten petition [Record No. 2] to which he has attached an appendix of documentary exhibits, A-E. Additionally, the Court has considered later-filed documents attached to Docket Entry No. 5 as Exhibits 1-5. The following is a summary or construction of the allegations contained therein.

On August 27, 2004, a jury convicted the petitioner of certain drug trafficking crimes in the United States District Court for the Northern District of Ohio, and on August 31, 2005, he was sentenced to 97 months imprisonment, to be followed by four years on supervised release. His appeal of the conviction is currently pending. The BOP initially confined Warman at its FCI-Milan facility in Michigan, where, he alleges, he inquired about serving part of his sentence on home confinement but was told that he must wait for such consideration until the last 11-13 months of his sentence. Exhibit [hereinafter "Ex."] D.

Petitioner was later transferred to the Ashland Prison Camp, arriving there on January 24, 2007. Here, he made two informal requests for immediate individual consideration for either home confinement or placement in a CCC, one request being written on March 16, 2007, and the other on March 27, 2007.

In the first request, Petitioner argued for "urgent consideration" for home confinement or CCC placement under 18 U.S.C. §§3621(b) and 3624(c). Ex. A. He does not provide a copy of the

---

[1] Also commonly called a "halfway house."

2

response to this request. In his March 27, 2007 request, he asks for home confinement or a CCC placement, "pursuant to title 18 U.S.C. § 3621(b)" only. Ex. 1. The response portion of the latter request form shows that on April 8th and 9th, two staff members responded, citing P.S. 7310.04 and informing Petitioner that he would be evaluated for placement 11 to 13 months before his projected release date. In his case, the petitioner was informed, "You will be evaluated for placement no later than May 30, 2009, which is 11 months before your projected release date of April 30, 2010." *Id*.

By the time of the staff members' responses, Petitioner Warman had already submitted the instant petition to this Court. In the petition, filed on March 29, 2007, he asks that the Court not require him to pursue the matter with the BOP any further administratively, as it would be a futile exercise. Rather, he asks the Court to decide the merits of his claims now, arguing that 18 U.S.C. 3621(b) authorizes a transfer to a CCC or home confinement at any time during an inmate's sentence, and that several Circuits have concluded that the BOP's policy limiting CCC and home confinement placements is not valid, Warman citing cases from the Third, Eighth, and Tenth Circuits. Based on this authority, the petitioner asks the Court to order the BOP to consider him for either home confinement or CCC placement.

DISCUSSION

Prisoners who seek relief under 28 U.S.C. §2241 are ordinarily required to exhaust administrative remedies before filing a habeas action in district court. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir.1996)); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950 (6th Cir. (Mich.) December 7, 2000) (Table) (Unpublished Deposition) (a federal prisoner must first exhaust his available administrative remedies before filing a §2241 petition); *United States v. Oglesby*, 52

3

Fed. Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir.2002) (citing *United States v. Wilson*, 503 U.S. 329, 335 (1992)).

Exhaustion is a judicially created requirement for §2241 petitions, and it is true that the Court may waive the requirement if it finds that exhaustion is futile. *See Davis v. Keohane*, 835 F.2d 1147 (6th Cir. 1987); *Manakee Professional Medical Transfer Service, Inc. v. Shalala*, 71 F.3d 574 (6th Cir. 1995). Resort to administrative remedies is only futile if there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." *James v. United States Dept. of Health and Human Services*, 824 F.2d 1132, 1139 (D.C. Cir. 1987).

The administrative remedies for federal prisoners bringing a 28 U.S.C. §2241 petition are set forth in 28 C.F.R. §§542.10-16 (1997). Section 542.13(a) demands that an inmate first informally present his complaint or request to the staff (BP-8 ½) before filing a formal request for an administrative remedy. If the inmate cannot informally resolve the issue with staff, then he may submit a formal written complaint/request (BP-9) to the warden. An inmate who is not satisfied with the warden's response may submit an appeal (BP-10) to the appropriate regional director; and an inmate who is not satisfied with the regional director's response may submit an appeal (BP-11) to the BOP's general counsel.

The BOP's response times are established in 28 C.F.R. §542.18, which provides that responses shall be made by the Warden "within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." *Id*. Only one extension of time is allowed the BOP. Therefore, under the facts alleged herein, Warman's completion of the administrative remedy process is, at most, only a few months away. Yet his projected release date

4

is years away. Why the need for immediate consideration of the merits of his claim?

Importantly, the Courts have insisted on the exhaustion of administrative remedies so as to prepare a record for the Court. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980). In the instant case, a record is greatly needed. The petitioner mentions two statutes in one informal request to staff and only one of the statutes in another. The BOP's policies, as stated in P.S. 7310.04, distinguish between an initial home confinement decision and CCC placements made in preparation for release, the dictates of 18 U.S.C. §3624(c) and the requirements of 18 U.S.C. §3621(b) being quite different.

The instant petitioner apparently does not distinguish between these two statutes or the BOP's policies on both types of placements. The rest of the petitioner's appeals and the corresponding responses of the Warden, the Regional Director, and/or the Administrator for National Inmate Appeals are needed to focus on the issues for the Court to decide. Through the administrative process, the Court should learn what the petitioner actually wants and when, by what authority(ies) he is denied what he wants, and whether the denial is contrary to federal law.

Moreover, with regard to the BOP's interpretation and implementation of §3621(b) in its program statement, the cases relied upon by the petitioner herein, *i.e., Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007); *Fultz v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 17 (3rd Cir. 2005); *Goldings v. Winn*, 383 F.3d 17, 28-29 (1st Cir. 2004); and *Elwood v. Jeter*, 386 F.3d 17, 28-29 (8th Cir. 2004), are from other circuits, and the appellate court in this circuit rejected the rationale of *Goldings* and *Elwood* in evaluating a change in the BOP's CCC policy in 2002. *See Dismas-Charities, Inc. v. United States Department of Justice*, 401 F.3d 666, 668 (6th Cir. 2005).

Accordingly, the Court is not inclined to address this matter on the merits at this time. Rather, the Court will deny the instant petition and dismiss the action without prejudice to Warman's bringing another petition upon a demonstration of full exhaustion of the administrative process.

## MOTIONS

After the petition was filed, Petitioner moved for permission to proceed *in forma pauperis* [Record No. 6], and for a temporary restraining order or preliminary injunction [Record No. 5] to terminate his current confinement in a solitary, maximum security cell of the prison area of the Ashland facility, to which he had recently been moved. With regard to his first motion, Warman has now paid the habeas filing fee. Therefore, the motion to proceed *in forma pauperis* will be denied as moot.

With regard to the request for preliminary injunctive relief, Petitioner alleges that on April 12, 2007, he was removed from the Ashland Prison Camp area, which is for minimum security inmates, and taken to the maximum security block of the Ashland prison, where he remains, purportedly having no idea why he has been placed in the harsher environment or for how long. He contends that the conditions there are "atypical" for a minimum security prisoner and posits several theories as to why he was transferred.

The four factors to be considered before granting a preliminary injunction are: (1) the movant's likelihood of success on the merits; (2) whether the movant could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v.*

*Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering these factors in relation to the facts in this case, (1) Petitioner has no likelihood of success on the merits of the current petition, as it will be dismissed today. In fact, the injunctive relief he seeks is unrelated to the merits of this action. If his First Amendment rights are violated to his detriment, as he alleges that he anticipates, and if he appeals the move administratively to exhaustion, then he may bring a separate action about his current detention after exhaustion, and he will then have a record for the Court to study. As it is now, a few weeks in detention, even in maximum security, appear to be "ordinary" for prisoners and not "atypical" in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Olim v. Wakinekona*, 461 U.S. 239 (1983) (6,000 mile transfer); *Meachum v. Fano*, 427 U.S. 215 (1976).

As to factor (2), Petitioner has failed to establish what irreparable injury would occur if not granted the injunctive relief requested. Importantly, Warman has not shown how the place of service of his current imprisonment will injure him at all. In short, the Court is unable to conclude that denying Warman the relief he requests now will result in *irreparable injury* to him, and it is "*irreparable*" injury which is the legal standard. Finally, as to factors (3) and (4), the Courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987).

The Court is not convinced that the public interest would be served by interfering with the BOP's discretion in selecting where this prisoner will be kept and for how long in any one location.

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1)   Petitioner Steven E. Warman's application to proceed *in forma pauperis* [Record No. 6] is **DENIED**, as moot.

(2)   Petitioner's motion for preliminary injunctive relief [Record No. 5] is **DENIED**.

(3)   Steven E. Warman's petition for writ of habeas corpus is **DENIED**.

(4)   This action will be **DISMISSED**, *sua sponte,* from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This May 10, 2007.

Signed By:
*Henry R Wilhoit Jr.*
United States District Judge